UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DANIEL T. WARREN,

                         Plaintiff,

          v.                                                    **DECISION AND ORDER**
                                                               06-CV-226S

UNITED STATES OF AMERICA, et al.,

                         Defendants.

## I.  INTRODUCTION

Plaintiff Daniel Warren commenced this action by filing a Complaint, on April 6, 2006, against the United States of America, United States Department of the Interior, National Indian Gaming Commission ("NIGC"), and various individual federal officials (together, the "Federal Defendants"), and George E. Pataki as Governor of the State of New York, and Cheryl Ritchko-Buley as Chair of the New York State Racing and Wagering Board (together, the "State Defendants").  Plaintiff filed an Amended Complaint on August 16, 2006, in which he claims that: (1) the Indian Gaming Regulatory Act ("IGRA") is unconstitutional, (2) the Gaming Compact between the State of New York and the Seneca Nation of Indians is invalid, (3) Part B of Chapter 383 of the Laws of 2001 is unconstitutional, and (4) the federal defendants have violated the United States' trust obligation toward Indian nations and tribes.  (Docket No. 17.)

The State Defendants moved to dismiss the Amended Complaint on August 20, 2006 (Docket No. 20), and the Federal Defendants followed suit on August 25, 2006

(Docket No. 23).  Thereafter, on October 2, 2006, Plaintiff moved for leave to file a second amended complaint.  (Docket No. 28).  That motion was rendered moot by Plaintiff's subsequent motion for leave to amend the amended complaint, filed on October 5, 2007. (Docket No. 43.)  That motion, in turn, was rendered moot by Plaintiff's further motion to amend and supplement the complaint, filed on March 16, 2009.  (Docket No. 72.)

Thus, the three motions currently pending are: (1) the State Defendants' motion to dismiss the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (Docket No. 20); (2) the Federal Defendants' motion to dismiss the Amended Complaint pursuant to Rule 12(b)(1) (Docket No. 23); and (3) Plaintiff's motion to amend and supplement the amended complaint to add new defendants and a new claim pursuant to Rules 15(a)(2) and (d) (Docket No. 72).  For the reasons stated below, Plaintiff's motion is denied, the Defendants' motions are granted, and this case is dismissed.

## II.  BACKGROUND

Plaintiff's Amended Complaint challenges certain decisions and actions by federal and New York State officials that permit the Seneca Nation of Indians ("SNI") to operate Class III gambling casinos in the cities of Niagara Falls and Buffalo, New York.

Plaintiff identifies himself as a resident of the Town of West Seneca, and a Town, Erie County, and New York State taxpayer.  (Docket No. 72-2 "Am. Compl." ¶¶ 5-6.)  He works within 1.5 miles of the Buffalo casino site and points to a number of detrimental effects he believes a casino will have on him and his environment, including: blight, an increased risk of crime emanating from a casino, lack of parking and an increase in traffic,

and other unspecified environmental, esthetic, health, and social consequences.  (*Id*. ¶ 7.)

Based on his concerns, Plaintiff asserts four causes of action, two against the Federal Defendants and two against the State Defendants.  First, Plaintiff claims that Congress, in enacting IGRA, exceeded its authority and violated the Tenth Amendment because IGRA compels state officers and the state legislature to enter into tribal-state gaming compacts that are prohibited by state law.  (*Id*. ¶¶ 55-57.)  In the Fourth cause of action, Plaintiff claims that the United States, by failing to adhere to existing regulations and to promulgate and implement new regulations under IGRA, violated its trust obligation toward Indian nations and tribes.  (*Id*. ¶¶ 84-107.)  As to the State Defendants, Plaintiff claims in his Second cause of action that the Gaming Compact between the State of New York and the SNI is invalid because it provides for commercial gambling in a state that does not permit such gambling for any purpose by any person, organization, or entity.  (*Id*. ¶¶ 58-60.)  The Third claim alleges that a New York statute authorizing the governor to enter into a gaming compact with the SNI—Part B of Chapter 383 of the Laws of 2001—is void because it violates the New York Constitution and, therefore, state officials exceeded their authority by entering into that agreement.  (*Id*. ¶¶ 61-83.)

The proposed second amended complaint includes the following revisions: (1)  it expands the first cause of action to allege that the State Defendants violated the New York Constitution in entering into a Gaming Compact with the Seneca Nation, and adds as defendants Maurice A. John,[1] as President of the Seneca Nation of Indians, E. Brian

---

[1]  Robert Porter presently serves as President of the Seneca Nation of Indians.

Hansberry,[2] as President and Chief Executive officer of Seneca Gaming Corp., and the Seneca Gaming Corporation (together, the "Proposed SNI Defendants"), (2) asserts the second and third claims against the Proposed SNI Defendants, (3) adds a new fourth cause of action against the NIGC and its former Chairman, Philip N. Hogen, alleging that Hogen acted contrary to law in failing to made an appropriate Indian lands determination and in approving a gaming ordinance for the SNI in a state where commercialized gambling is unlawful, and (4) renumbers the Amended Complaint's fourth cause of action as the new fifth cause of action.

In moving to dismiss the Amended Complaint's Second and Third causes of action, the State Defendants urged that: (1) the court lacks jurisdiction over the claims pursuant to the Eleventh Amendment, (2) the claims are barred by *res judicata*, (3) the claims are time-barred, and (4) they do not state a cognizable claim for relief.  The State Defendants now ask the Court to resolve their motion prior to considering the viability of Plaintiff's proposed amendments because matters of jurisdiction, *res judicata*, and timeliness cannot be cured by amending the pleadings, and a ruling on their motion may compel the conclusion that some or all of the proposed amendments are futile, at least as to them. (Docket No. 80.)

The Federal Defendants moved to dismiss the Amended Complaint's First and Fourth claims on the ground that Plaintiff lacks standing to bring either a Tenth Amendment or an IGRA claim.  The Federal Defendants (Docket No. 81) and the Proposed SNI Defendants (Docket No. 85, in an *amicus* brief) also oppose the motion to amend on the

---

[2]  Cathy Walker presently serves and President and Chief Executive Officer of the Seneca Gaming Corporation.

basis of futility, arguing that the Seneca Nation and its governmental entitites and officials enjoy sovereign immunity from suit.

The Court will consider all arguments in the context of Plaintiff's existing and proposed claims for relief.

## III.  DISCUSSION

**A.    Standards of Review**

1.    Rule 12(b)(1) Motion to Dismiss

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  The plaintiff bears the burden of establishing the existence of federal jurisdiction.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).

Where, as here, the jurisdictional challenges are raised at the pleading stage, the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor.  Sharkey v. Quarantillo, 541 F.3d 75, 83 (2d Cir. 2008). It is "presume[d] that general [fact] allegations embrace those specific facts that are necessary to support the claim."  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990) (alterations added).  The court also may consider affidavits and other evidence outside the pleadings to resolve the jurisdictional issue, but it may not rely on conclusory or hearsay statements contained in affidavits.  J.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004), cert. denied, 544 U.S. 968, 125 S. Ct. 1727, 161 L. Ed. 2d 616 (2005).  Indeed, courts "must" consult factual submissions "if resolution

of a proffered factual issue may result in the dismissal of the complaint for want of jurisdiction." Robinson v. Gov't of Malaysia, 269 F.3d 133, 140 n.6 (2d Cir. 2001).

"In assessing whether a plaintiff has sufficiently alleged or proffered evidence to support jurisdiction . . . , a district court must review the allegations in the complaint, the undisputed facts, if any, placed before it by the parties, and—if the plaintiff comes forward with sufficient evidence to carry its burden of production on this issue—resolve disputed issues of fact . . . ." Id. at 140.

2.    Rule 12(b)(6) Motion to Dismiss

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC, 595 F.3d 86, 91 (2d Cir. 2010) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

The Supreme Court recently clarified the appropriate pleading standard in Ashcroft v. Iqbal, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The decision instructs district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. Though "legal conclusions can

6

provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations[,] a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 1949 (quoting and citing Twombly, 550 U.S. at 556-57 (internal citations omitted)).

3.    Motion to Amend

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a pleading shall be freely given when justice so requires. *See* Livingston v. Piskor, 215 F.R.D. 84, 85 (W.D.N.Y. 2003). "Absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility, Rule 15's mandate must be obeyed." Monahan v. New York City Department of Corrections, 214 F.3d 275, 283 (2d Cir. 2000) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)), *cert. denied*, 531 U.S. 1035 (2000)).

The standard for evaluating opposition to a proposed amendment on the ground it would be futile is whether the opposing party has established that the claim could not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Fei v. WestLB AG, No. 07 Civ. 8785, 2008 U.S. Dist. LEXIS 16338, *5 (S.D.N.Y. Mar. 5, 2008). In making this determination, a district court merely assesses the legal feasibility of the complaint, not "the weight of the evidence which might be offered in support thereof." Connell v. City of New

York, No. 00 Civ. 6306, 2002 U.S. Dist. LEXIS 215, *6 (S.D.N.Y. Jan. 8, 2002) (quotation omitted).  A district court may not deny a motion to amend where a colorable ground for relief exists.  Hines v. City of Albany, 542 F. Supp. 2d 218, 224 (N.D.N.Y. 2008).

## B.    The Federal Defendants

The Federal Defendants seek dismissal of the claims against them, under Rule 12(b)(1) of the Federal Rules of Civil Procedure, on the ground that Plaintiff lacks standing to bring a claim under either the Tenth Amendment or the IGRA.

Standing is an essential component of the case or controversy requirement of Article III, section 2 of the United States Constitution.  The Supreme Court has articulated the following "irreducible constitutional minimum" for standing: 1) the plaintiff must have suffered an "injury in fact;" 2) the injury must be fairly traceable to the defendant; and 3) it must be "likely," rather than "speculative," that the injury will be redressable by the court. Defenders of Wildlife, 504 U.S. at 560-61; see also, Hein v. Freedom from Religion Found., Inc., 551 U.S.587, 598, 127 S. Ct. 2553, 168 L. Ed. 2d 424 (2007) (confirming well-established requisite elements of Article III standing).  An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Defenders of Wildlife, 504 U.S. at 560 (internal citations, footnote and quotation marks omitted).  These requirements "tend[ ] to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 472, 102 S. Ct. 752, 70 L. Ed.

2d 700 (1981) (alteration added).  The party invoking federal jurisdiction bears the burden of establishing its existence.  <u>Defenders of Wildlife</u>, 504 at 561 (citing <u>FW/PBS, Inc. v. Dallas</u>, 493 U.S. 215, 231, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990)).

In addition to the constitutional limitations on federal court jurisdiction, the prudential doctrine of standing encompasses judicially-imposed limits on its exercise.  <u>United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.</u>, 517 U.S. 544, 551, 116 S. Ct. 1529, 134 L. Ed. 2d 758 (1996).  The Supreme Court has held that "prudential standing encompasses the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.  Without such limitations—closely related to Art. III concerns but essentially matters of judicial self-governance—the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights."  <u>Elk Grove Unified Sch. Dist. v. Newdow</u>, 542 U.S. 1, 12, 124 S. Ct. 2301, 159 L. Ed. 2d 98 (2004) (internal quotation marks and citations omitted).

1.    <u>The Tenth Amendment Claim</u>

In his First cause of action, Plaintiff alleges that, in enacting IGRA, Congress exceeded its authority under the Indian Commerce Clause as limited by the Tenth Amendment.  The Tenth Amendment provides that "powers not delegated to the United States by the Constitution . . . are reserved to the States[.]"  U.S. Const. amend. X.

The Federal Defendants, relying on <u>Tennessee Electric Power Co. v. Tennessee</u>

Valley Authority, 306 U.S. 118, 144, 59 S. Ct. 366, 83 L. Ed. 543 (1939), urge that Plaintiff lacks standing to allege any violation of the Tenth Amendment because a purported violation of a state's rights must be brought by a representative of the state or its instrumentality.

But Tennessee Electric's holding notwithstanding, at the time these parties briefed this issue, courts of appeals were split on whether private parties have standing to challenge a federal act on Tenth Amendment grounds.  See, e.g., Gillespie v. City of Indianapolis, 185 F.3d 693, 703-04 (7th Cir. 1999), cert. denied, 528 U.S. 1116 (2000) (allowing private party to bring Tenth Amendment challenge); Medeiros v. Vincent, 431 F.3d 25, 33-36 (1st Cir. 2005), cert. denied, 548 U.S. 904 (2006) (holding that private party has no standing to bring Tenth Amendment claim).  The Supreme Court recently revisited this issue and resolved the circuit split.  In Bond v. United States, the Court held that a litigant who is a party to an otherwise justiciable case or controversy is not forbidden to object that the claimed "injury results from disregard of the federal structure of our Government." ___ U.S. ___, 131 S. Ct. 2355, 2366-67, 180 L. Ed. 2d 269 (2011).  Based on this authority, the nature of Plaintiff's claim, alone, does not compel the conclusion that Plaintiff lacks standing.

Nevertheless, a plaintiff asserting a Tenth Amendment claim must also have an otherwise justiciable case or controversy.  Here, the Amended Complaint does not identify any injury resulting from the alleged violation of states' rights.  Plaintiff seeks to correct this deficiency in his proposed second amended complaint by alleging that he was deprived of his right to a public debate and vote on the issue of whether "to alter New York's public policy against commercialized gambling in the manner and as required by the New York

State Constitution and his ability to hold his elected officials accountable for their respective acts and omissions."  (Docket No. 72-2 ¶ 109.)  This injury is alleged to arise from IGRA's requirement that states enter into compacts and regulate gambling on Indian lands, even where state law otherwise limits the circumstances under which gambling can occur.

The Federal Defendants did not respond to this particular proposed amendment, but in moving to dismiss, they did urge that Plaintiff cannot meet his burden of showing he has a legally protected constitutional interest that would give rise to an injury.  (Docket No. 23-2 at 12-13.)  Plaintiff responded to their argument by detailing the injuries now alleged in his proposed pleading.

As previously noted, the Tenth Amendment reserves to States powers not delegated to the United States by the Constitution.  Article I, § 8, cl. 3 of the Constitution delegates broad power to the United States to regulate Indian affairs by empowering Congress to "regulate Commerce . . . with the Indian Tribes."  It is well-settled that this power "singles Indians out as a proper subject for separate legislation" and affords plenary legislative authority in Indian affairs.  Morton v. Mancari, 417 U.S. 535, 551-52, 94 S. Ct. 2474, 41 L. Ed. 2d 290  (1974) (suit challenging constitutionality of hiring preference in favor of Native Americans); *see also*, United States v. Lara, 541 U.S. 193, 200, 124 S. Ct. 1628, 158 L. Ed. 2d 420 (2004) (Congress's powers to legislate in respect to Indian matters is "plenary and exclusive"); South Dakota v. Yankton Sioux Tribe, 522 U.S. 329, 343, 118 S. Ct. 789, 139 L. Ed. 2d 773 (1998) ("Congress possesses plenary power over Indian affairs, including the power to modify or eliminate tribal rights."); Cotton Petroleum Corp. v. New Mexico, 490 U.S. 163, 192, 109 S. Ct. 1698, 104 L. Ed. 2d 209 (1989) ("[T]he central

function of the Indian Commerce Clause is to provide Congress with plenary power to legislate in the field of Indian affairs[.]") (citing <u>Morton</u>, 417 U.S. at 551-52; <u>County of Oneida</u>, 470 U.S. at 234 ("With the adoption of the Constitution, Indian relations became the exclusive province of federal law.")

Congress's purposes in enacting the IGRA were:

(1) to provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments;

(2) to provide a statutory basis for the regulation of gaming by an Indian tribe adequate to shield it from organized crime and other corrupting influences, to ensure that the Indian tribe is the primary beneficiary of the gaming operation, and to assure that gaming is conducted fairly and honestly by both the operator and players; and

(3) to declare that the establishment of independent Federal regulatory authority for gaming on Indian lands, the establishment of Federal standards for gaming on Indian lands, and the establishment of a National Indian Gaming Commission are necessary to meet congressional concerns regarding gaming and to protect such gaming as a means of generating tribal revenue.

25 U.S.C. § 2702.  In regulating the tribal operation of gambling facilities on Indian land, the IGRA "seeks to balance the competing sovereign interests of the federal government, state governments and Indian tribes, by giving each a role in the regulatory scheme." <u>Artichoke Joe's v. Norton</u>, 216 F. Supp. 2d 1084, 1092 (E.D. Cal. 2002), *aff'd*, 353 F.3d 712 (9th Cir. 2003), *cert. denied*, 543 U.S. 815, 125 S. Ct. 51, 160 L. Ed. 2d 20 (2004).

Here, Plaintiff claims this scheme violates the Tenth Amendment "by compelling [state officials] to enter into agreements that are prohibited by state law and regulate gambling."  (Am. Compl. ¶ 57; Docket No. 72-2 ¶ 108.)  In other words, he asserts that Congress exceeded its bounds under the Indian Commerce clause by requiring states to

act contrary to state law and public policy.  He points, in particular, to the following IGRA provisions:

> Class III gaming activities shall be lawful on Indian lands only if such activities are–
>
> * * * * *
>
> (B) located in a State that permits such gaming for any purpose by any person, organization, or entity, and
>
> (C) conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the State under paragraph (3) that is in effect.

25 U.S.C. § 2710(d)(1)(B) and (C).  Paragraph (3) goes on to provide that:

> (3) (A) Any Indian tribe having jurisdiction over the Indian lands upon which a class III gaming activity is being conducted, or is to be conducted, shall request the State in which such lands are located to enter into negotiations for the purpose of entering into a Tribal-State compact governing the conduct of gaming activities. Upon receiving such a request, *the State shall negotiate with the Indian tribe in good faith* to enter into such a compact.
>
> (B) Any State and any Indian tribe may enter into a Tribal-State compact governing gaming activities on the Indian lands of the Indian tribe, but *such compact shall take effect only when notice of approval by the Secretary of such compact has been published by the Secretary in the Federal Register*.

25 U.S.C. § 2710(d)(3) (emphasis added).

This Court finds that Plaintiff's attempt to identify a legally protected interest fails because his claim is premised on an incorrect reading of IGRA's provisions.  By its plain terms, IGRA requires only that state officials negotiate in good faith with a tribe that wishes to operate a gambling facility on Indian land located within that state.  It does not require that states ultimately enter into gaming compacts.

Almost a decade ago, another district court opined that:

> If IGRA attempted to force the State to regulate by compact all gaming activities on tribal lands it might indeed run afoul of the Tenth Amendment.

13

> But Congress clearly was cognizant of the Tenth Amendment when it acknowledged that a State need not forgo any State governmental rights to engage in or regulate class III gaming except whatever it may voluntarily cede to a tribe under a compact.  IGRA's terms do not force the State to enter into a compact, it only demands good faith negotiation in order to meet state, as well as tribal and federal, interests.

Yavapai-Prescott Indian Tribe v. State of Arizona, 796 F. Supp. 1292, 1297 (D. Az. 1992) (citations omitted).  The United States Supreme Court later noted that IGRA's intricate procedures relating to the negotiation of tribal-state compacts show an intent by Congress to limit significantly the duty imposed on states by 25 U.S.C. § 2710(d)(3).  Seminole Tribe v. Florida, 517 U.S. 44, 74-75, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996).  If, after following the defined procedures, a state declines to enter into a compact, that is the end of the matter as far as state participation is concerned.  The Secretary of the Interior then prescribes procedures governing the tribe's Class III gaming, which is conducted under tribal and federal regulation only.  Id.[3];  Yavapai-Prescott, 796 F. Supp. at 1297.  In sum, while IGRA strongly encourages state involvement, it neither compels states to enter into gaming compacts nor does it require states to participate in the regulation of gaming activities on Indian lands.  Therefore, even assuming Plaintiff is not otherwise precluded from asserting a Tenth Amendment claim, he lacks standing here because the cited IGRA provisions are not violative of the Tenth Amendment and so Plaintiff cannot demonstrate

---

[3]  In Seminole Tribe, the Seminoles sued the State of Florida and its governor, under 25 U.S.C. § 2710(d)(7), seeking to compel the state to enter negotiations toward formation of a tribal-state compact. The Supreme Court was asked to consider whether the Indian Commerce Clause granted Congress the power to abrogate the States' Eleventh Amendment sovereign immunity such that tribes could bring suit against states in federal court.  The Supreme Court held that the Indian Commerce clause does not grant that power, and therefore § 2710(d)(7)'s provision for suit against a nonconsenting state was beyond Congress's authority.  417 U.S. at 47.

The Court was not asked to determine whether this or any other provision of IGRA violates the Tenth Amendment.  Nevertheless, it did consider the entirety of § 2710(d)(7)'s procedural scheme and concluded that the duty imposed upon states is simply to engage in good faith negotiations within the meaning of IGRA.

the existence of an injury-in-fact.  As Plaintiff's proposed second amended complaint rests on precisely the same erroneous reading of IGRA, the proposed amendment is futile and this claim is dismissed.

2.   The IGRA Claims

In his Fourth cause of action, Plaintiff alleges that the NIGC Chairman gives "perfunctory approval" to tribal gaming ordinances, and that the "Federal Defendants'" decisions to confer restricted fee status on certain land in Niagara Falls and Buffalo were contrary to 25 CFR § 151.3.[4]  (Am. Compl. ¶¶ 100, 102-03.)  In the proposed second amended pleading, Plaintiff states more specifically that the NIGC Chairman failed to make an appropriate Indian lands determination prior to approving the SNI's gaming ordinance (Docket No. 72-2 ¶ 141), and further alleges that the Federal Defendants have failed to comply with their statutory duties in connection with another case commenced in this district, to which Plaintiff is not a party (*id.* ¶¶ 170-72).

The Federal  Defendants note, and Plaintiff concedes, that IGRA does not afford individual plaintiffs a private right of action.  Therefore, Plaintiff seeks to enforce IGRA through the Administrative Procedures Act ("APA"), 5 U.S.C. § 702, which entitles "[a] person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action" to judicial review.  The Federal Defendants contend that Plaintiff cannot meet his burden of establishing the constitutional elements of standing, and does not fall within the zone of interests necessary for prudential standing.

---

[4]  Plaintiff also makes extensive allegations of systemic deficiencies at the Department of the Interior and NIGC which he concludes led to violations of 25 U.S.C. §§ 2710(d)(1)(B)-(C) and/or 2719. (Am. Compl. ¶ 96; Docket No. 72-2 ¶ 173.)  It is not entirely clear which, if any, of these violations are alleged with regard to the SNI.  For purposes of these motions the Court will presume that tribe and site-specific allegations were intended.

Once again, to establish an injury sufficient for constitutional standing, Plaintiff must first have a legally protected interest that is threatened by Defendants' actions. <u>Defenders of Wildlife</u>, 504 U.S. at 572-73 nn.7-8. Here, Plaintiff alleges that the Secretary's and the NIGC's approval of tribal-state compacts and gaming ordinances violated IGRA. For purposes of this discussion only, the Court will assume that Plaintiff can identify a legally protected interest in these regards.

The interests identified must be "concrete and particularized"—*i.e.*, they must affect this Plaintiff in a personal and individual way, as opposed to having a generalized impact on all members of the public. <u>Defenders of Wildlife</u>, 504 U.S. at 560 n.1. As previously noted, Plaintiff believes he will be subjected to blight, an increased risk of crime emanating from a casino, lack of parking and an increase in traffic, and other unspecified environmental, esthetic, health, and social consequences. (Am. Compl. ¶ 7.) He alleges a relationship to the Buffalo site only, stating that he resides 6 miles from that site and works within 1.5 miles of the site. (*Id.*) In his proposed pleading, he seeks to add that he also travels at least five days per week within 1,000 feet of the Buffalo site, presumably in the course of his workday commute. (Docket No. 72-2 ¶ 9.) These allegations do not suffice to show a concrete and particularized interest, even at this more liberal pleading stage.

From his allegations, it is clear that Plaintiff does not live, work or own property in the <u>immediate vicinity</u> of the Buffalo site, such that any of the alleged harms can be said to be particular to him. Courts considering standing for purposes of IGRA routinely have examined the plaintiffs' proximity to the site in determining whether the alleged injury is particular and individualized. *See* <u>Citizens against Casino Gambling v. Hogen</u>, No. 07-CV-

16

451, 2008 U.S. Dist. LEXIS 52395, at *64 (W.D.N.Y. July 8, 2008) (ten of fourteen individual plaintiffs found to have sufficiently alleged concrete and particularized interest where they either resided or operated businesses *in same neighborhood* as proposed gambling facility and alleged the facility would negatively impact physical integrity, safety and environmental quality of neighborhood); City of Roseville v. Norton, 219 F. Supp. 2d 130, 157-58 (D.D.C. 2002) (organization plaintiff sufficiently alleged standing to bring claim under IGRA where its members *lived in close proximity* to proposed gaming site and claimed the facility would negatively impact their health and security), *aff'd*, 348 F.3d 1020 (D.C. Cir. 2003), *cert. denied*, 541 U.S. 974, 124 S.Ct. 1888, 158 L. Ed. 2d 470 (2004); Nulankeyatmonen Nkihtaqmikin v. Impson, 503 F.3d 18, 27 (1st Cir. 2007) (tribe members had particularized and concrete interest in Bureau of Indian Affairs' purported failure to follow requisite statutory procedures before approving lease of tribal land to developer where members *lived and worked near the lease site and used the land* and surrounding waters for ceremonial and community purposes); TOMAC v. Norton, 193 F. Supp. 2d 182, 186, 187-88 n.1 (D.D.C. 2002) (plaintiffs *living within a few blocks of* a proposed casino project that would "significantly and permanently alter the physical environment of their neighborhood" alleged sufficiently personal, individual injury to meet standing requirements for IGRA and other claims).  Accepting as true Plaintiff's alleged relationship to the SNI's Buffalo site, the current and proposed allegations are simply too attenuated to suggest a personal, individualized  injury.

Moreover, an injury in fact also must be actual or imminent, not conjectural or hypothetical.  Plaintiff's vague concerns that he will be victimized by crime emanating from

the casino, that he will experience a lack of parking 1.5 or 6 miles from the site, and that he will suffer unnamed environmental, health and social consequences are pure conjecture. For these reasons, Plaintiff's current and proposed allegations do not meet the standing requirements for a claim under IGRA. *See* <u>Citizens against Casino Gambling</u>, 2008 U.S. Dist. LEXIS 52395 at *73-74 (standing not sufficiently alleged by one plaintiff concerned over impact of casino on all poor and vulnerable county residents, another who claimed to have moved out of neighborhood due to anticipated future effects of casino, another whose only connection to area was provision of services to persons living close to casino site, and another who expressed concern as taxpayer that casino would result in increased government costs). In sum, Plaintiff's Amended Complaint does not sufficiently allege an injury in fact for purposes of IGRA standing, and his proposed second amended pleading does not cure the deficiencies. Therefore, the proposed amendment is futile and this claim is dismissed.

## C.    The State Defendants

The State Defendants first argue that they are immune from suit and this Court lacks jurisdiction over the claims against them. It is well-settled that absent the state's consent, a state is immune from suits in federal court brought by its own citizens. *See* <u>Edelman v. Jordan</u>, 415 U.S. 651, 662-63, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974); <u>McGinty v. New York</u>, 251 F.3d 84, 91 (2d Cir. 2001) The Eleventh Amendment specifically bars claims against a state by private individuals seeking either monetary damages or retroactive injunctive relief. <u>McGinty</u>, 251 F.3d at 91; *see also* <u>Cory v. White</u>, 457 U.S. 85, 90-91, 102, S. Ct. 2325, 72 L. Ed. 2d 694 (1982). Thus, "Eleventh Amendment immunity represents

a real limitation on a federal court's federal-question jurisdiction." Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 270, 117 S. Ct. 2028, 138 L. Ed. 2d 438 (1997).

In Ex parte Young, however, the Supreme Court established an important limit on this sovereign-immunity principle. 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908). Its doctrine, now more than a century old, allows federal courts to award prospective injunctive relief against state officials for violations of federal law, and "rests on the premise . . . that when a federal court commands a state official to do nothing more than refrain from violating federal law, [the official] is not the State for sovereign-immunity purposes." Virginia Office for Prot. & Advocacy v. Stewart, __ U.S. __, 131 S. Ct. 1632, 1638, 179 L. Ed. 2d 675 (2011). The Ex parte Young doctrine is limited to this precise situation and does not apply when the state is the real, substantial party in interest. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984). As the Supreme Court noted in Pennhurst:

> A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment.

465 U.S. at 106. "In determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Verizon Md. Inc. v. Public Serv. Comm'n of Md., 535 U.S. 635, 645, 122 S. Ct. 1753, 152 L. Ed. 2d 871 (2002) (citation and internal quotation marks omitted).

Here, there is no dispute that Plaintiff is seeking prospective relief.  But the State Defendants urge the Amended Complaint alleges state law violations only, such that Eleventh Amendment immunity applies, while Plaintiff contends he is alleging that state officials violated federal law, so that his claims fall within the Ex parte Young exception. In addition, Plaintiff argues that the State has waived its sovereign immunity and that this Court has supplemental jurisdiction over his claims.

      1.    Ex parte Young

In support of his Ex parte Young argument, Plaintiff contends that: (1) the Second and Third causes of action expressly refer to IGRA and incorporate prior allegations of IGRA violations by reference, (2) the claims are properly brought in federal court under the Administrative Procedure Act ("APA"), (3) though the Court will be required to base its determinations on the New York State Constitution and the Laws of New York, those determinations will merely aid in resolving the ultimate question of compliance with federal law, and (4) the state law claims are preempted by IGRA.  For the reasons below, the Court finds Plaintiff's reliance on Ex parte Young is misplaced.

    This Court will first address Plaintiff's argument that, regardless of the nature of his claim, he may properly sue the State Defendants in federal court under the APA.  Plaintiff relies on 5 U.S.C. § 704, which states that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."  He contends that his Second and Third causes of action state colorable claims because they challenge "final agency action."  But, under the APA, the term "agency" has a specific meaning and is defined as "*each authority of the Government of the United States*," subject to specified exclusions.  5 U.S.C. § 701(b)(1) (emphasis

20

added).   In other words, the APA authorizes suit only against certain United States agencies; it does not provide a basis for suit against *state* agencies or officers.

Plaintiff's three remaining Ex parte Young arguments all focus on the State's alleged violation of IGRA as the basis for federal jurisdiction.   The State argues, and this Court agrees, that, notwithstanding Plaintiff's references to this federal statute, his claims against the State cannot be characterized as "involv[ing only] some antecedent state-law question" or as based on federal law.

Plaintiff first contends that his "incorporation" of all preceding fact allegations into his Second and Third claims compels the conclusion that he sufficiently states a violation of federal law.   But the sole preceding fact allegation relating to a State Defendant is that Governor Pataki executed a Compact with the SNI on or about September 10, 2002.  (Am. Compl. ¶ 18.)  From there Plaintiff proceeds to claim, in his Second cause of action, that the Compact is invalid under state law and so also violates IGRA.  (*Id*. ¶¶ 59-60.)  In the Third cause of action, he goes on to claim that the Compact was not lawfully ratified by the State Legislature, and that the state law permitting the Governor to enter into the Compact violates Articles III §§ 15 and 17, VII § 8, and IX of the New York State Constitution, as well as its prohibition on commercial gambling.  (*Id*. ¶¶ 77-82.)  Again, Plaintiff concludes that the Compact is invalid under state law and so also violates the IGRA.  (*Id*. ¶¶ 82-83.)  The IGRA provisions allegedly violated are found at 25 U.S.C. § 2710(d)(1)(B) and (C).  (*Id*. ¶¶ 59, 83.)

As already fully discussed in connection with the Federal Defendants, the only affirmative requirement these and related provisions impose upon states is to negotiate in good faith.   While a state may then enter into a compact, it is not compelled to do so.

Moreover, even assuming the Compact Governor Pataki entered into violates the New York Constitution, this, in itself, does not constitute a violation of IGRA because a compact between a state and a tribe has no effect at all unless and until it receives federal approval. 25 U.S.C. § 2710(d)(3)(B).  Accordingly, IGRA's unambiguous provisions provide no basis for relief as to State Defendants.

Plaintiff next argues that he states a federal claim against the State Defendants because the IGRA "preempts" state law.   This argument apparently relates to his conclusion, in the First cause of action against the Federal Defendants, that the IGRA "commandeers state officers . . . to carry out and implement federal policy . . . by compelling them to enter into agreements . . . and regulate gambling." (Am. Compl. ¶ 57.) A claim that Congress enacted a federal statute which violates the Tenth Amendment to the Constitution of the United States is necessarily a claim against the United States only. Accordingly, Plaintiff's unsupported argument that "preemption" extends culpability to the states is rejected.

Plaintiff alternatively alleges, in his Third cause of action against the State Defendants, that "[i]f . . . Article I § 9[5] of the New York Constitution is not pre-empted by federal law then Part B of Chapter 383 of the Laws of 2001 and the Compact is [sic] illegal and unconstitutional in that it [sic] violates the State Constitutional prohibition on commercial gambling."  (Id. ¶ 82.)  Because his Third claim is premised on the absence of federal preemption, it is beyond dispute that it asserts a violation by the State Defendants of state law only.

---

[5]  The cited provision authorizes certain types of regulated gaming.

Accordingly, none of the arguments Plaintiff advances supports the application of Ex parte Young as a basis for jurisdiction over the State Defendants.

2.    Waiver

Plaintiff next claims that the State asserted jurisdictional defenses in a prior state court action Plaintiff brought against it, and "[t]hrough this conduct of compelling plaintiff to bring these claims in this forum the State Defendants have voluntarily waived any Eleventh Amendment defense." (Docket No. 34 at 12.) While Plaintiff concedes the State Defendants did not remove his prior state court action to federal court, he contends the State "took affirmative action to preclude review of its action in the state court pointing to this forum and the need for any such action to include the Federal Defendants and others so as to compel the plaintiff to initiate an action in this forum." (*Id.*)  The cases cited by Plaintiff do not support waiver in the circumstances that exist here.  *See, e.g.*, Lapides. v. Board of Regents, 535 U.S. 613, 620, 122 S. Ct. 1640, 152 L. Ed. 2d 806 (2002) (by removing lawsuit from state court to federal court, state voluntarily invokes federal court's jurisdiction and waives Eleventh Amendment immunity).  While the cited cases clearly stand for the proposition that a state may, at any time, waive immunity by commencing or voluntarily joining a federal court proceeding, the instant action was commenced in federal court against the State Defendants and their participation here is involuntary.  Plaintiff has offered no authority, nor is this Court aware of any, that would support a conclusion that jurisdictional defenses raised in one forum act as a waiver of immunity in a separate action commenced in a different forum.  Therefore, this argument, too, is rejected.

3.     Supplemental Jurisdiction

Finally, Plaintiff argues that "[s]ince the United States is a party this court has jurisdiction."[6]   In Pennhurst, the Supreme Court expressly considered and rejected the applicability of supplemental jurisdiction to state-law claims against a state:

> [N]either pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment.  A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment. We concluded above that a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment.  We now hold that this principle applies as well to state-law claims brought into federal court under pendent jurisdiction.

465 U.S. at 121 (footnote and internal citation omitted); see also, County of Oneida v. Oneida Indian Nation, 470 U.S. 226, 251, 105 S. Ct. 1245, 84 L. Ed. 2d 169 (1985).

For all of the reasons stated, the Amended Complaint's Second and Third causes of action assert state law claims against the State Defendants and are barred by the Eleventh Amendment.  Therefore, they are subject to dismissal as a matter of law.

4.     The Proposed Amendments

This inquiry is not concluded, however, until the Court considers Plaintiff's proposed second amended complaint.  In support of his motion to amend, Plaintiff contends that amendment will not be futile because he does not assert state law claims against the State Defendants.   He then goes on to describe his five proposed causes of action as challenging the conduct of the Federal Defendants only.   (Docket No. 73 at 8-9.) Notwithstanding this characterization, the proposed second amended complaint asserts

---

[6]  At paragraph 4 of the Amended Complaint, Plaintiff "invokes the supplemental jurisdiction of this court to decide claims arising under the New York State Constitution and New York law pursuant to 28 USC § 1367."

precisely the same claims against the State Defendants as appear in the Amended Complaint.  The second proposed claim alleges that the State Defendants acted in excess of their authority when they entered into the Compact, because games of chance are prohibited by New York law.  (Docket No. 72-2 ¶¶ 112-14, 116.)  The third proposed claim alleges the State Defendants violated several provisions of the New York Constitution.  In addition, Plaintiff proposes adding the State Defendants to its first cause of action by alleging that they acted in excess of their authority and contrary to the New York Constitution in entering into a Compact that permits commercialized gambling.  This proposed claim is entirely duplicative of both the existing and proposed second cause of action.

Plaintiff's proposed second amended pleading is futile as to the State Defendants for the same reasons that require dismissal of the Amended Complaint against them. Accordingly, Plaintiff's Motion to Amend is denied with regard to the State Defendants, and the State Defendants' Motion to Dismiss is granted.  Because these claims are subject to dismissal on Eleventh Amendment grounds, the Court need not address the State Defendants' further arguments for dismissal.

**D.    The Proposed SNI Defendants**

Plaintiff also wishes to amend his Amended Complaint to add new Defendants, specifically, the President of the Seneca Nation of Indians, the Seneca Gaming Corporation ("SGC"), and the SGC's President.  Plaintiff alleges, in the proposed second amended complaint, that these SNI Defendants violated the Tenth Amendment and IGRA by entering into an unlawful tribal-state compact.  (Docket No. 72-2 ¶¶ 100, 112, 118.)

It is well-settled that Indian tribes are immune from lawsuits in both state and federal

25

court unless "Congress has authorized the suit or the tribe has waived its immunity." Kiowa Tribe v. Manufacturing Techs., 523 U.S. 751, 754, 118 S. Ct. 1700, 140 L. Ed. 2d 981 (1988).  Because of tribal sovereign status, "suits against . . . tribal officials in their official capacity are barred in the absence of an unequivocally expressed waiver by the tribe or abrogation by Congress."  Dry v. United States, 235 F.3d 1249, 1253 (10th Cir. 2000) (citation and internal quotation marks omitted); *see also*, United States v. Oregon, 657 F.2d 1009, 1013 n.8 (9th Cir. 1981) (sovereign immunity extends to tribal officials when acting in their official capacity and within their scope of authority).

In arguing the propriety of joining these defendants, Plaintiff first urges that the concept of tribal sovereign immunity is outdated and unnecessary, particularly with respect to a tribe's purely commercial activities, and he asks this Court to repudiate the doctrine with regard to the SGC.  Alternatively, he argues that the SGC has waived its immunity to suit.  As for the individual defendants, Plaintiff contends that he may pursue prospective equitable relief against tribal officials under Ex parte Young, 209 U.S. 123.  The SNI, in an *amicus* brief, and the Federal Defendants, oppose each argument.

1.    The SGC

Here, Plaintiff urges that the SGC operates solely as a commercial entity and not as an arm of tribal government and so immunity should not be extended to this enterprise. Alternatively, he argues that even if immunity applies, the SGC's charter includes a "sue and be sued" clause which acts as a waiver.

Although Plaintiff argues at length and with passion for the abandonment of tribal immunity in the context of tribal business activities, the cases he cites that have considered this argument have each rejected it.  Okla. Tax Comm'n., 498 U.S. at 510 (declining to

26

modify principle of tribal sovereign immunity in light of Congress's desire to promote goal of Indian self-government including overriding goal of encouraging tribal self-sufficiency and economic development); Kiowa Tribe, 523 U.S. at 758-60 (recognizing that there might be reasons to doubt wisdom of perpetuating doctrine of tribal sovereign immunity, particularly with regard to commercial enterprises, but declining to restrict immunity for commercial or off-reservation activities; instead deferring to Congress on matter); *see also,* Pan American Co. v. Sycuan Band of Mission Indians, 884 F.2d 416, 419 (9th Cir. 1989) (Indian sovereignty is not discretionary principle subject to equities of a given situation).

Under current law, Congress has not abrogated tribal immunity with regard to tribal commercial activities, and the Supreme Court has indicated that such abrogation is not a proper judicial function.  As such, Plaintiff's sweeping request that this Court abandon the doctrine of tribal immunity in the commercial context is denied.

Plaintiff next points to the SGC's charter, which he refers to in his proposed second amended complaint, and argues that its text confirms the SGC does not operate as an arm of tribal government.  Federal courts have recognized that only "[o]fficial tribal enterprises that act as a division or arm of the tribe are immune from suit as an extension of the tribe's sovereign immunity."  Gristede's Foods, Inc. v. Unkechauge Nation, 660 F. Supp. 2d 442, 477 (E.D.N.Y. 2009); (citing , Native Am. Distrib. v. Seneca-Cayuga Tobacco Co., 546 F.3d 1288, 1292-96 (10th Cir. 2008) (holding that tobacco manufacturer had sovereign immunity as an enterprise of the tribe, which deprived the district court of subject matter jurisdiction) and Allen v. Gold Country Casino, 464 F.3d 1044, 1046 (9th Cir. 2006) (holding that casino was entitled to tribal sovereign immunity as an arm of the tribe)).

Several courts, both federal and state, have attempted to establish a set of factors

27

to be considered when determining whether an organization is entitled to tribal immunity. *See* Breakthrough Mgmt. Grp., Inc. v. Chukchansi Econ. Dev. Auth., 629 F.3d 1173 (10th Cir. 2010); Gristede's Foods, Inc. v. Unkechauge Nation, 660 F. Supp. 2d 442 (E.D.N.Y. 2009); Runyon ex rel B.R. v. AVCP, 84 P.3d 437 (Alaska 2004); Wright v. Prairie Chicken, 1998 S.D. 46, 579 N.W.2d 7 (S.D. 1998); Gavle v. Little Six, Inc., 555 N.W.2d 284 (Minn. 1996); Ransom v. St. Regis Mohawk Educ. & Comm. Fund., Inc., 86 N.Y.2d 553, 658 N.E.2d 989, 992-93, 635 N.Y.S.2d 116 (N.Y. 1995) (quoting Altheimer & Gray v. Sioux Mfg. Corp., 983 F.2d 803, 809 (7th Cir.), *cert. denied,* 510 U.S. 1019, 114 S. Ct. 621, 126 L. Ed. 2d 585 (1993). The tests employed by these courts are variations of what is typically referred to as the "subordinate economic entity" analysis. *See* Somerlott v. Cherokee Nation Distribs., Inc., No. CIV-08-429-D, 2010 U.S. Dist. LEXIS 38021, 2010 WL 1541574, *3 n.1 (W.D. Okla. 2010).

Courts in this Circuit have identified the following as factors weighing in favor of immunity: the entity is organized under tribal constitution or laws (rather than federal law); the organization's purpose(s) are similar to a tribal government's (e.g., promoting tribal welfare, alleviating unemployment, providing money for tribal programs); the organization's managing body is necessarily composed primarily of tribal officials (e.g., organization's board is, by law, controlled by tribal council members); the tribe's governing body has the unrestricted power to dismiss members of the organization's governing body; the tribe is the legal owner of property used by the organization, with title held in the tribe's name; the organization's administrative and/or accounting activities are controlled or exercised by tribal officials; and a suit against the entity will impact tribal resources. Ransom, 88 N.Y.2d at 559.

In 2005, the Superior Court of Connecticut applied these same factors to the SNI's Seneca Niagara Falls Gaming Corporation ("SNFGA")—which is a wholly owned subsidiary of proposed defendant SGC—and concluded the entity is a governmental instrumentality of the SNI.  Seneca Niagara Falls Gaming Corp. v. Klewin Bldg. Co., No. 4004218, 2005 Conn. Super. LEXIS 3295, at *5-7, 12-14 (Conn. Super. 2005) (setting forth bases for finding that each factor was satisfied).

Having reviewed the SGC charter—which provisions, not surprisingly, are incorporated in all relevant respects into the subsidiary SNFGC charter—this Court finds that the SGC is a government instrumentality entitled to immunity for the same reasons detailed by the Connecticut Superior Court.  Specifically, SGC is incorporated under Seneca tribal law; it was created to generate income to provide for the general welfare of SNI members; a majority of the board of directors are enrolled Senecas; the SGC's principal place of business is on the Cattaraugus reservation; all important corporate acts require approval of the tribal Council; the tribal Council may remove SGC board members for cause; and though a suit against SGC will not directly impact the Nation's fiscal revenues, a large judgment could render it unable to meet its significant financial obligations to the SNI.  (Docket No. 85-2.)

In his reply memorandum, Plaintiff, for the first time, questions the SNI's tribal status and asserts the SNI has not demonstrated on the record that it can be considered an Indian tribe at all.  First, no such issue is raised in the Amended Complaint or in Plaintiff's proposed second amended pleading.  Moreover, in advancing his argument, Plaintiff again asks this Court to deviate from settled law.  For tribal immunity to apply, the tribe must be recognized as such by Congress or the Bureau of Indian Affairs ("BIA"), United States v.

Sandoval, 231 U.S. 28, 46-47, 34 S. Ct. 1, 58 L. Ed. 107 (1913), or meet the federal common law definition of an Indian tribe, Montoya v. United States, 180 U.S. 261, 266, 21 S. Ct. 358, 45 L. Ed. 521 (1901).  Plaintiff concedes that the SNI appears on the BIA's list of federally recognized Indian tribes, but then goes on to urge, without support, that "this court should not give any weight or deference to the fact."  (Docket No. 83 at 3.)  That fact is indisputable evidence of the SNI's sovereignty and Plaintiff's argument is rejected.

Finally, Plaintiff contends that, to the extent the SGC is found to have immunity, a "sue and be sued" clause in its charter acts as an unequivocal waiver of sovereign immunity.  The clause in question provides, in pertinent part:

> The Council hereby gives its consent to allowing the Company, by resolution duly adopted by the Board of Directors, to sue and be sued in its corporate name, upon, or to submit to arbitration or alternative dispute resolution any controversy arising under, any contract, claim or obligation arising out of its activities under this Charter, provided, that such resolution shall be subject to the approval of Council.  The Council also authorizes the Company, by resolution duly adopted by the Board of Directors, to agree by contract to waive its immunity from suit, provided that such waiver shall be subject to the approval of Council.

(Docket No. 85-2 at 7.(a).)

A tribe may voluntarily subject itself to suit by issuing a "clear" waiver.  The Supreme Court has noted that "the law governing waivers of immunity by foreign sovereigns" is instructive for a court considering an asserted waiver of tribal immunity.[7]  C & L Enters. v. Citizen Band Potawatomi Indian Tribe of Okla., 532 U.S. 411, 421 n.3, 121 S. Ct. 1589, 149 L. Ed. 2d 623 (2001).  In the contexts of both foreign and state sovereign immunity "courts considering a bare 'sue and be sued' clause . . . have arrived at the same

---

[7]  Although Plaintiff again questions whether the SGC is a purely corporate entity to which immunity does not apply, this Court already has determined it is a governmental instrumentality entitled to tribal immunity.

conclusion: the clause constitutes a waiver of immunity (if at all) only in the courts of the sovereign." Garcia v. Akwesasne Hous. Auth., 268 F.3d 76, 86-87 (2d Cir. 2001) (collecting cases).

The Second Circuit decision in Garcia, which applies these principles to a question of tribal immunity, is instructive here.  In that case, a tribal ordinance granted the tribe's housing authority the council's "irrevocable consent" to sue and be sued on any contract, claim or obligation and to agree by contract to waive any immunity from suit.  Id. at 86.  The plaintiff, relying on this clause, brought an employment discrimination claim in federal court against the authority.  Applying the foregoing principles, the court concluded that the ordinance itself did not waive the authority's immunity to suit in federal court.  It then went on to reject the plaintiff's contention that she and the authority had implicitly contracted for such a waiver, noting that such waivers must be explicit.  Id. at 87.

This Court sees no reason why this analysis should not be applied with equal force to this case.  First, the clause Plaintiff relies on here is far more restrictive than that in Garcia; the council's consent to SGC is not "irrevocable," nor does it grant SGC a unilateral right to waive immunity—such waiver is effective only if made by resolution and approved by the tribal council.  And here, Plaintiff does not even allege that any such resolution exists with regard to the Tenth Amendment and IGRA claims he seeks to assert.  Accordingly, this clause has no impact on immunity in this case.  See, Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth., 207 F.3d 21, 30 (1st Cir. 2000) (provision granting entity the authority to waive immunity does not in itself serve to perfect waiver); Dillon v. Yankton Sioux Tribe Hous. Auth., 144 F.3d 581, 583-84 (8th Cir. 1998) (where provision itself requires explicit waiver of sovereign immunity through a written document,

the provision alone does not constitute waiver).

For all of these reasons, the SGC enjoys sovereign immunity from suit. Accordingly, Plaintiff's motion to amend to add SGC as a defendant is denied as futile.

2.   SNI Officials

As discussed above in connection with the State Defendants, Ex parte Young, 209 U.S. 123, allows federal courts to award prospective injunctive relief against state officials for violations of federal law. A number of circuit courts have expressly recognized Ex parte Young as an exception not just to state sovereign immunity but also to tribal sovereign immunity. See, e.g., Crowe & Dunlevy, P.C. v. Stidham, 640 F.3d 1140, 1154-1155 (10th Cir. 2011); Vann v. Kempthorne, 534 F.3d 741, 749, 383 U.S. App. D.C. 14 (D.C. Cir. 2008); Garcia, 268 F.3d at 87; N. States Power Co. v. Prairie Island Mdewakanton Sioux Indian Cmty., 991 F.2d 458, 460 (8th Cir. 1993); Tamiami Partners, Ltd. ex rel. Tamiami Dev. Corp. v. Miccosukee Tribe of Indians, 177 F.3d 1212, 1225-26 (11th Cir 1999); cf. Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe, 498 U.S. 505, 514, 111 S. Ct. 905, 112 L. Ed. 2d 1112 (1991) (leaving open Ex parte Young's applicability in tribal context). The Second Circuit has expressly identified two qualifications to its application in the tribal context. First, the law under which the plaintiff seeks injunctive relief must apply substantively to the tribe, agency, or corporation, and, second, the plaintiff must have a private cause of action to apply the substantive rule. Garcia, 268 F.3d at 88.

Here, Plaintiff seeks injunctive relief by suing both the SNI President and the SGC president. Under the criteria established in this Circuit, his claims must fail. First, to the extent he seeks to state a claim under the Tenth Amendment, its protections run to the states as against the federal government, and not as against Indian nations. Therefore,

the Tenth Amendment does not "apply substantively" to the SNI.  Plaintiff also alleges violations of IGRA.   While IGRA does impose obligations on tribes and applies substantively to them, Plaintiff acknowledged in connection with his claims against the Federal Defendants that he has no private right of action under the statute.  *See, e.g.,* Hartman v. Kickapoo Tribe Gaming Comm'n, 319 F.3d 1230, 1232 (10th Cir. 2003) ("nowhere does IGRA expressly authorize private individuals to sue directly under the statute for failure of a tribe . . . to comply with its provisions").   The APA, on which he relied in advancing claims against the Federal Defendants, does not "apply substantively" to the SNI.  Finally, to the extent Plaintiff seeks to claim that the SNI's entry into a tribal-state compact violated New York State's constitution, the doctrine of Ex parte Young applies to violations of federal law only.  Frazier v. Turning Stone Casino, 254 F. Supp. 2d 295, 310 (N.D.N.Y. 2003).

Accordingly, the Ex parte Young doctrine is inapplicable here and the proposed claims against SNI officials are futile, as well.

## IV.  CONCLUSION

For the reasons fully stated above, each claim set forth in Plaintiff's proposed second amended complaint is futile.   Further, the claims advanced in his Amended Complaint are either outside this Court's jurisdiction or otherwise fail as a matter of law.  Therefore, Plaintiff's Motion to Amend is denied in its entirety, and Defendants' Motions to Dismiss the Amended Complaint are granted.  Because Plaintiff had a full opportunity to respond to Defendants' motions and to attempt to correct pleading deficiencies through amendment, the dismissal is with prejudice.

33

## V.  ORDERS

IT HEREBY IS ORDERED, that Plaintiff's Motion to Amend and Supplement the

Amended Complaint (Docket No. 72) is DENIED.

FURTHER, that the State Defendants' Motion to Dismiss the Amended Complaint

(Docket No. 20) is GRANTED.

FURTHER, that the Federal Defendants' Motion to Dismiss the Amended Complaint

(Docket No. 23) is GRANTED.

FURTHER, that the Clerk of Court shall take the necessary steps to close this case.


SO ORDERED.

Dated:        March 12, 2012
              Buffalo, New York


<u>/s/William M. Skretny</u>
WILLIAM M. SKRETNY
Chief Judge
United States District Court